IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LIMITLESS WORLDWIDE, LLC,<br><br>      Plaintiff,<br><br><br><br><br><br>               vs.<br><br><br>ADVOCARE INTERNATIONAL, LP,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF REQUEST FOR A TRO AND PRELIMINARY INJUNCTION<br><br><br><br><br><br>Case No. 2:13-CV-40 |

This matter is before the Court on Defendant AdvoCare International, LP's ("AdvoCare") Motion and Memorandum in Support of Request for a TRO and Preliminary Injunction. AdvoCare seeks an order restraining and enjoining Limitless Worldwide, LLC ("Limitless") from using the word "Spark" in its products.  For the reasons discussed below, Defendant's Motion will be denied.

## I.  BACKGROUND

Defendant AdvoCare owns a registered trademark in the mark "AdvoCare Spark" for a "[n]utritional dietary supplement in the form of a powdered drink mix."[1]  Defendant sells an energy drink using the term "Spark" which is often accompanied by the name "AdvoCare."

Plaintiff has begun selling and advertising an energy drink, which also uses the word "Spark" along with Plaintiff's name "Limitless."

Plaintiff brought this action seeking declaratory judgment that its use of "Spark," "Limitless Spark," and "Spark Liquid Shot" do not infringe Defendant's trademark.  Defendant has filed a counterclaim, which includes claims for violation of the Lanham Act 15 U.S.C. § 1114, violation of the Lanham Act 15 U.S.C. § 1125(a), Federal Unfair Competition/False Designation of Origin/False Advertising, Blurring and Dilution by Tarnishment in violation of the Lanham Act 15 U.S.C. § 1125(c), common law trademark infringement, common law unfair competition, and a violation of the Utah Deceptive and Unfair Practices Act.  Defendants now seek a temporary restraining order and preliminary injunction.

## II.  STANDARD OF REVIEW

A temporary restraining order and a preliminary injunction share the same standard.[2]  "A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal."[3]

---

[1] Docket No. 6, Ex. 1.

[2] *Bachman By and Through Bachman v. West High School*, 900 F. Supp. 248, 250 (D. Utah 1995) *aff'd* 132 F.3d 542 (10th Cir. 1997).

[3] *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006).

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[4]

## III.  DISCUSSION

A.     LIKELIHOOD OF SUCCESS

The parties focus their arguments on Defendant's Lanham Act claims, without doing much to differentiate between them and, more specifically, focus their arguments on the issue of likelihood of confusion.  The Court can do the same.[5]

The Tenth Circuit has identified six factors that serve as a guide for evaluating the likelihood of confusion: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) the relation in use and the manner of marketing between the goods or services marketing by the competing parties; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the mark.[6]

1.     *Similarity Between the Marks*

Under the first factor, "the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks."[7]  "The degree of similarity between marks rests on

---

[4]*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[5]Though not addressed by either party in any detail, there are serious doubts that Defendant has a valid common law trademark in "Spark."

[6]*Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005).

[7]*Id*. (quotation marks and citation omitted).

sight, sound, and meaning."[8]  The "court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side by side with the protected trademark."[9]

It cannot be legitimately disputed that there are similarities between the "AdvoCare Spark" mark and the "Limitless Spark" mark.  Both products contain the company name (AdvoCare or Limitless) in small print, with the word "Spark" in a larger font.  However, Plaintiff has provided evidence that there are twenty-nine separate federal registrations for the word "Spark" standing alone,[10] and at least five different registered trademarks for beverages, including energy drinks, containing the word "Spark."[11]  Additionally, Plaintiff has provided evidence that these other beverages sometimes package their products so that the word "Spark" is prominently displayed in a large font.[12]  Given the prevalence of the word "Spark" in the beverage market, it is unlikely that Plaintiff's mark would confuse consumers.  Therefore, this factor weighs against a finding of likelihood of confusion.

---

[8]*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

[9]*Id.*

[10]Docket No. 18-6, at 1-2.

[11]*Id.* at 6-22.

[12]*Id.* at 25-39.

2.       *Intent of the Alleged Infringer*

"Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion."[13]  "The proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or good will of plaintiff."[14]

There is no proof that Plaintiff chose its mark with the intent of copying Defendant. Defendant asserts that "[k]nowledge of AdvoCare's priority mark can be assumed from the federal registration" and that "an internet search . . . for 'Spark Energy Drink' returns an entire page in which every entry but one is for or about AdvoCare Spark."[15]  However, Plaintiff has presented evidence that an outside consulting firm suggested the name "Limitless Spark" and that "[a]t the time Limitless selected LIMITLESS SPARK as the name of its ready-to-drink product, it was unaware that Advocare owned the trademark for ADVOCARE SPARK."[16]  Defendant argues, in reply, that "[i]t stretches all credibility to claim that" Plaintiff had no knowledge of its mark, and that "Limitless does not actually deny having knowledge of Advocare's Spark product."[17]

While it is true that Plaintiff has chosen its words carefully, Defendant has presented no

---

[13]*Id*. at 973

[14]*Id*. (quotation marks and citation omitted).

[15]Docket No. 6, at 22.

[16]Docket No. 18 Ex. 2, ¶ 4.

[17]Docket No. 19, at 8.

evidence that Plaintiff chose its mark with the intent of copying Defendant.  Therefore, this factor weighs against a finding of likelihood of confusion.

        *3.*      *Evidence of Actual Confusion*

"Although not necessary to prevail on a trademark infringement claim, evidence of actual confusion in the marketplace may be the best indication of likelihood of confusion."[18]  Defendant has presented no evidence of actual confusion.  All that Defendant has said on this point is that "AdvoCare has received several inquires about the Limitless product, including questions about comparisons of the products and . . . potential distributors and customers who have purchased AdvoCare Spark in the past about the Spark sold by Limitless and the direct sales system of Limitless."[19]  Importantly, Defendant states nothing about these inquiries showing any actual confusion between the two products.  Therefore, this factor weighs against a finding of likelihood of confusion

        *4.*      *Relation in Use and Manner of Marketing*

"The greater the similarity between the products . . . , the greater the likelihood of confusion."[20]  The Court is to consider "(1) the similarity of the products and (2) the similarity in the manner of marketing the products."[21]

There are similarities between the two products and the manner in which they are

---

[18]*Sally Beauty Co., Inc.*, 304 F.3d at 974.

[19]Docket No. 6, at 22-23.

[20]*Sally Beauty Co., Inc.*, 304 F.3d at 974 (quotation marks and citation omitted).

[21]*Id.*

marketed, but there are also differences.  Both products are energy drinks, however Defendant's product comes in powder form, while Plaintiff's product is a ready-to-drink liquid shot.  Further, there are distinct differences in the packaging of each product.  The products are marketed in a similar fashion, namely through direct marketing.  However, Defendant has presented evidence showing that it markets its products much more generally, "through local and national magazine and television ads, print advertising, internet advertising, multi-year sponsorship of a NASCAR race (the AdvoCare 500 in Atlanta, Georgia), a second AdvoCare 500 title sponsorship race held in Phoenix, Arizona in 2012, multi-year sponsorship of a specific NASCAR racecar, multi-year sponsorship of an NCAA College Football Bowl Game (the AdvoCare V100 Independence Bowl in Shreveport, LA) endorsements by professional athletes, thousands of corporate sponsored promotional events, and a direct sales network of hundreds of thousands of independent distributors."[22]  There is no such evidence concerning Plaintiff's marketing activities.  Therefore, this factor is neutral in determining a likelihood of confusion.

     *5.*     *Degree of Care*

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion."[23]  Neither party addresses this issue and it is unlikely that the majority of the parties' customers would exercise a high degree of care.  However, Defendant makes much of the fact that its products are used by "many athletes."[24]  Defendant has explained that

---

[22]Docket No. 6, at 5-6.

[23]*Sally Beauty Co., Inc.*, 304 F.3d at 975.

[24]Docket No. 6, at 5.

"[m]any customers, including professional and amateur athletes, rely on the quality and reputation of AdvoCare products and the certification . . . that these products are free from banned substances."[25]   The Court believes that at least this subset of consumers would exercise a high degree of care in selecting the products they put into their bodies.   Therefore, this factor is largely neutral, but weighs somewhat to a lack of likelihood of confusion.

      *6.*      *Strength or Weakness of the Mark*

      Finally, the Court considers the strength of the mark.   "The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."[26]

      "'There are five different categories of terms with respect to the protection of a mark: generic, descriptive, suggestive, arbitrary, and fanciful.'"[27]   Defendant argues that the AdvoCare Spark mark is arbitrary or at least suggestive.   Plaintiff, on the other hand, argues that "the term SPARK, when applied to an energy drink, is descriptive."[28]

> A mark is descriptive if it describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product [or service] is put.   A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services].   An arbitrary mark applies a common word in an unfamiliar way.[29]

---

[25]*Id.* at 6.

[26]*Sally Beauty Co., Inc.*, 304 F.3d at 975.

[27]*Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

[28]Docket No. 18, at 17.

[29]*Donchez*, 392 F.3d at 1216 (quoting *Lane Capital Mgmt.*, 192 F.3d at 344).

Defendant's mark is clearly not arbitrary.  "Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services."[30]  An arbitrary mark "has no descriptive connotation with this product."[31]  An arbitrary mark does not conjure "up any mental reaction that suggests the nature or quality of the product or service.  That is, the words used as a mark do not in any way describe anything about the product at all."[32]  Some examples of arbitrary marks include: arrow liqueurs, flash music group; horizon banking services, mustang motel, sun bank, and wild horse beer.[33]

"Suggestive terms, as the word implies, suggest rather than describe the goods or services."[34]  "'A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services].'"[35]  With a suggestive mark, "although they are meant to project a favorable or idealistic image with which a prospective user might identify, a person without actual knowledge would have difficulty in ascertaining the nature of the products that the

---

[30] 2 McCarthy on Trademarks and Unfair Competition § 11:11 (4th ed. 2008).

[31] *Id.*

[32] *Id.* § 11:13.

[33] *Id.*

[34] *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002).

[35] *Donchez*, 392 F.3d at 1216 (quoting *Lane Capital Mgmt.*, 192 F.3d at 344).

mark represents."[36]  The following are examples of suggestive marks: chicken of the sea tuna fish, coppertone sun tan oil, orange crush orange drinks, rain bird irrigation sprinkler system, soft smoke smoking tobacco, and wrangler western boots and jeans.[37]

In contrast, descriptive marks "merely describe a function, use, characteristic, size, or intended purpose of the product."[38]  Examples of merely descriptive marks include: after tan post-tanning lotion, 5 minute glue, and yellow pages phone directory.[39]

In this case, Defendant's mark is best described as suggestive, as it suggests that one who consumes Defendant's product will get a spark or boost of energy.  However, if a person did not have knowledge that Defendant's product was an energy drink, they would have difficulty ascertaining the nature of its product.  Therefore, Defendant's product is likely suggestive.

"Suggestive, fanciful, and arbitrary marks are considered inherently distinctive and entitled to trademark protection."[40]  Thus, this factor weighs in favor of Defendant.

In conclusion, while there are similarities between the parties' products, primarily the use of the word spark, there is little else to suggest a likelihood of confusion.  Therefore, Defendant has failed to show a likelihood of success on the merits or meet its high burden of showing a clear and unequivocal right to relief.  Therefore Defendant's request for a temporary restraining

---

[36]*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).

[37]2 McCarthy on Trademarks and Unfair Competition § 11:72.

[38]*Sara Lee Corp.*, 81 F.3d at 464.

[39]*Id*.

[40]*Sally Beauty Co., Inc.*, 304 F.3d at 976.

order and preliminary injunction should be denied.

B.      IRREPARABLE HARM

Potential damage to reputation and likelihood of confusion may constitute irreparable injury.[41]  Loss of customers, loss of goodwill, and threats to a business' viability have been found to constitute irreparable harm.[42]

Defendant argues that its reputation will be harmed and that it will lose goodwill if injunctive relief is not issued.  However, because there is not a likelihood of confusion, any damage to reputation or loss of goodwill will be minimal.  Therefore, this factor does not weigh in favor of injunctive relief.

C.      BALANCE OF THE INJURIES

Because Defendant cannot show that it will be harmed absent injunctive relief, this factor weighs against issuance of the injunction.  Further, if an injunction were issued, Plaintiff would be harmed because it would be forced to change its marketing materials, including product packaging, and other related materials.

D.      PUBLIC INTEREST

Finally, it is not in the interest to issue injunctive relief where the other factors weigh against such relief.

---

[41]*See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

[42]*See Hill's Pet Nutrition, Inc. v. Nutro Prod., Inc.*, 258 F. Supp. 2d 1197, 1205 (D. Kan. 2003); *see also Optician Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will.").

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion and Memorandum in Support of Request for a TRO

and Preliminary Injunction (Docket No. 6) is DENIED.

The hearing set for March 8, 2013 is STRICKEN.

DATED   February 25, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge